## SARAH A. DOHERTY

*v.*

## EGAN WASTE COMPANY.

[Decided May 21st, 1920.]

1. Where lots are shown on a map in a block laid down as two hundred feet by four hundred feet, and as actually laid out on the ground the block is upwards of two hundred by four hundred, by means whereof the map and ground dimensions differ, and the entire block along the street upon which the property in question fronts has located thereon contiguous buildings which have been erected a great many years, none of which can be said to stand precisely on the lot as described in the deed therefor, and there has existed for upwards of fifty years a building in the middle of the block next adjoining the premises in question, to the east, which has been used by surveyors as a fixed monument for locating other properties, which building and the one adjoining to the east make a party wall the division line, and every owner of lands to the west of said monument has at least the quantity of land called for in his deed, and every owner to the east of said monument has the quantity of land, or more than that, called for in his deed, excepting one who is short about one inch, which is included in the land of his neighbors—*Held*, 1. That the owners in the block fronting on said street were compelled to, and did, resort to practical location, and, by erecting their buildings, acquiesced in the locations thus established.   2. The facts in the case plainly show if defendant takes the property it will not be exposed to litigation, there being no legitimate question or doubt, either of law or fact, affecting the title.

2. Where the building in question encroached to a slight extent on the adjoining property, and the cost of making it conform to the true line is trifling, the decree should be made with abatement of part of purchase price; but as the building, since the commencement of the suit, has been destroyed by fire, no abatement should be made.

3. Where the defendant was in possession, and time is not of the essence of the contract, and the encroaching building is destroyed by fire pending the suit, the defendant should be decreed to perform.

On pleadings and proofs.

*Mr. James R. Erwin,* for the complainant.

*Messrs. Queen & Stout,* for the defendant.

GRIFFIN, V. C.

The bill in this cause is filed to compel specific performance of a contract for the sale of lands in Jersey City known as lots 35 and 37 in block 16 on Mangin's map of 1804, being also lots 43 and 45 in block 66 on the Bacot map of 1861.

The contract is dated January 10th, 1917; title was to pass May 1st, 1917. The defendant refused to take title. The bill was filed August 15th, 1917. The building was totally destroyed by fire December 5th, 1917. The defendant became tenant in possession of the premises in 1909, and continued in possession, carrying on its business, until ousted by the fire, and thereafter collected $2,000 insurance covering its interest under the contract.

Defendant's objections are:

1. That the premises, as actually located, are one foot and twelve hundredths (1 12/100) feet east of the true line called for by the deed.

2. That, assuming the location to be correct, the building on the lands on the westerly side line from a point beginning thirty-three and seventy hundredths feet from the street encroaches on the adjoining property to the west one and one-half inches at the beginning point, and one inch in the rear.

As to the first point:

According to the Mangin map, the block is two hundred feet by four hundred, being two hundred on Washington and Greene streets, and four hundred on Morris. It contains thirty-two lots, of the dimensions of twenty-five by one hundred feet each. Washington street is laid down eighty feet wide, and Morris and Greene streets each sixty feet. As actually laid out on the land, Greene street is sixty and eight hundredths feet in width at the corner of Morris street.

The length of the block, measured along Morris street, as built upon, is four hundred and one and forty-two hundredths feet, giving a surplus of one and forty-two hundredths feet, one foot of which is in the two lots next Greene street; twelve hundredths of a foot is contained in the premises in question in front, and twenty hundredths of a foot in the rear; and thirty

hundredths of a foot is included in the lots between Washington street and the westerly line of the premises in question.

All of these lots fronting on Morris street were, on the date of the contract, covered by buildings, each of which was in actual contact with the one next adjoining, all of which had been erected a long time, and none of which may be said to comply with the lines of the maps, excepting the two next adjoining the building on the corner of Washington and York streets. These two, with the one on the corner, should have a frontage of fifty feet, but the frontage is actually fifty and fifty-two hundredths feet, due to the fact, as the survey shows, that the corner house extends fifty-two hundredths of a foot into the street as laid out.

The remaining lots lying between Washington street and the premises in question, in their order running easterly from Washington street, with their width by deed, and as actually built upon as shown by survey, are as follows: Lot 59, Bacot map (being rear part of lots 19, 21, 23, Mangin map) by deed twenty-five feet, building twenty-five and twenty-one hundredths feet; lot 57, Bacot map (rear part of lots 19, 21, 23, Mangin map) by deed twenty-five feet, building twenty-four and ninety-one hundredths feet (deficiency less than an inch); lot 55, Bacot map (47, Mangin), by deed twenty-five feet, building twenty-five and eighteen hundredths feet; lots 51 and 53, Bacot map (43 and 45, Mangin map) each twenty-five feet by deed, and each building is twenty-five feet; the next building covers parts of lots 47 and 49, Bacot, and 39 and 41, Mangin—by deed twenty-seven and forty-two hundredths feet, building twenty-seven and forty-two hundredths feet; remaining part of lot 47, Bacot, and 39, Mangin—by deed twenty-two and fifty-eight hundredths feet, building twenty-two and fifty-eight hundredths feet. Thus every lotowner between Washington street and the premises in question has at least the width called for by his deed, excepting the case of lot 57, where there is a deficiency of less than one inch, which was taken by his neighbors, whose buildings are wider than their lots described in their deeds. Turning to the lots east, between the premises in question and Greene street, every owner has all the land called for by deed,

and some have more. Thus, the entire block is built upon with each building in contact with its neighbor, and every owner fronting on Morris street has at least the quantity of land called for in his deed, excepting the owner of lot 57, above referred to.

In the conveyances of the various lots the beginning point, in the descriptions where metes and bounds are given as to lots west of the centre line of the block, is the southeast corner of Washington and Morris streets, and, as to lots east of the centre line, the southwest corner of Morris and Greene streets. In some instances, on both sides of said centre line, the lots are merely described by lot and block numbers on Mangin's map.

The centre line of the block, with or without the surplus, runs through the McGovern property. The easterly line of his property runs through the centre of a party wall standing partly on his premises and those of Sowukin, to the east, whose lands abut the premises in question.

The description in the deed to McGovern (made in 1892) begins on the southerly side of Morris street one hundred seventy-five feet easterly of the southeasterly corner of Washington and Morris streets, being in line with the easterly line of lot 43 on the Mangin map. The first course is then described as running along the easterly line of lot 43 on Mangin's map. After running several other courses, the fifth and sixth read as follows:

"Thence northerly and parallel with Washington street to and through the centre of a party wall standing partly on the premises hereby conveyed and partly on the premises next adjoining, easterly seventy-five feet to the southerly line of Morris street; thence westerly along the southerly line of Morris street twenty-seven feet five inches to the place of beginning."

This description, when it refers to the centre of the party wall as being "one hundred seventy-five feet plus twenty-seven feet five inches from the corner," is erroneous in that, as actually built upon, the centre line of the party wall, by reason of the surplus, is thirty hundredths of a foot farther east.

But an important feature of the description is that this easterly line of lot 43 is made to coincide with the westerly side

wall of the building, and ties this easterly line twenty-seven feet five inches (27.42 feet) from the centre of the party wall.

If, therefore, the distance of one hundred seventy-five feet is accepted, the property intended to be conveyed is not correctly described; but if rejected as false, and the fixed monument, the party wall, is accepted as correct, then McGovern gets what he bargained for and the other owners will not be disturbed in their possession.

Turning to the Sowukin property, being the easterly part of lot 39, which abuts the premises in question on the west, the centre line of this same party wall mentioned in the McGovern deed is made the westerly boundary of his property. The beginning point in his deed is placed in the southerly line of Morris street one hundred seventy-five feet westerly from the southwesterly corner of Morris and Greene streets. The first course is described as running along the easterly line of lot 39 on Mangin's map, which is the dividing line between Sowukin and the premises in question. The third and fourth courses read as follows:

"Thence northerly and parallel with Greene street, to, through and beyond the centre of a party wall standing partly on the premises hereby conveyed and partly on the premises next adjoining westerly thereto seventy-five feet to the southerly side of Morris street; thence easterly along the southerly side of Morris street twenty-two feet seven inches to the beginning."

What has been said as to the McGovern property may be repeated as to this. The centre of the party wall is not one hundred seventy-five feet plus twenty-two and fifty-eight hundredths feet from Greene street as the block is laid out and actually built upon, but is one foot and twelve hundredths (1 12/100) farther west.

By these two descriptions, McGovern and Sowukin acquired title to lots 39 and 41, being the two lots in the centre of the block fronting on Morris street, and by these conveyances fix and establish the side lines of these lots a certain number of feet east and west of the centre line of the party wall, and are in possession of the lands thus described, which are actually built upon in accordance with such descriptions.

Mr. Dunham, a prominent civil engineer, who made a great

many surveys and locations in this block, says that the building on Sowukin's property has been used since at least 1868 as a fixed monument to locate the various properties in the block; that, by reason of the existing surplus, the lines of the various properties cannot be determined by reference to the maps alone; that resort had to be made to practical location, with a view to giving to every owner the quantity called for in his deed; that the same situation substantially exists, generally, as to lots and blocks on Mangin's map.

It must be quite apparent from the foregoing facts, that the owners of lots in this block fronting on Morris street, were confronted with conditions that, in the very nature of things, prevented them from establishing the lines of their properties by map, and were therefore compelled to, and did, resort to a practical location, each taking the quantity to which he was entitled by deed, and conceding the same to his neighbors.

The only person who could attack the complainant's title is Sowukin. Is he in a position where he even has a colorable right? In the deed under which he claims, his westerly side line is described as running through the centre of a party wall, which has been a monument for upwards of fifty years. His easterly side line is described as lying twenty-two and fifty-eight hundredths feet east of the centre line of this party wall, which side line is also described as being the easterly side line of lot 39 on Mangin's map, which also, as a matter of fact, is the westerly side line of lot 37 on Mangin's map, one of the lots in question.

Upon the foregoing facts the lines of the property as established by practical location should be accepted as establishing the true boundaries of the premises in question, and the other descriptions inconsistent therewith should be rejected as false. *Jackson* v. *Perrine, 35 N. J. Law 137; Spottiswoode* v. *Morris and Essex Railroad Co., 61 N. J. Law 322 (339) ; affirmed, 63 N. J. Law. 667; Alt* v. *Butz, 81 N. J. Law 156.*

The foregoing cases were decided at law, where all persons interested were parties and were bound by the judgment. Here, the persons who might assert against the title are not parties to the suit, and will not be bound by the decree made herein;

therefore, the defendant argues, that if compelled to take the property he will be exposed to litigation, and therefore this court should not decree specific performance. *Van Riper* v. *Wickersham, 77 N. J. Eq. 232; Doutney* v. *Lambie, 78 N. J. Eq. 277* (which cases were decided by the court of errors and appeals) ; *Kohlrepp* v. *Ram, 79 N. J. Eq. 386.*

In this latter case, Vice-Chancellor Garrison said:

"I incline to the opinion that, in view of two recent decisions in the court of errors and appeals, the court of chancery has gone farther than it should go in deciding doubtful questions of law; and, of course, is fully vindicated and justified in not attempting to decide an issue of fact affecting the title where proof of the facts is not of record or always available to use. The two cases to which I refer are *Van Riper* v. *Wickersham* (*1910*), 77 *N. J. Eq.* (*7 Buch.*) *232*, and *Doutney* v. *Lambie* (*1910*), 78 *N. J. Eq.* (*8 Buch.*) *277*. Under the language of these cases, this court should not force a title upon the defendant where there exists a legitimate question or doubt, either of law or of fact, affecting the title."

It is inconceivable how, under the facts of this case there is even a remote chance of the owner of the premises in question being subjected to litigation by reason of the alleged mislocation. There is no doubt, either of law or fact, as to the title. If Sowukin, or those claiming under him, should sue, the record of the Sowukin deed can at all times be used to show that the westerly line of the Sowukin lot is the centre line of the party wall, and, measuring twenty-two and fifty-eight hundredths feet easterly, no portion of the premises in question is included. The location of the centre line of this party wall may always be shown with certainty; therefore, there does not exist a legitimate question or doubt of law or fact affecting the title.

As to the second objection: The width of the premises in question actually built upon, is fifty-two and twelve hundredths feet (fifty feet, one and a half inches) in front, and fifty and twenty hundredths feet (fifty feet, two and four-tenths inches) in the rear.

The building, when originally constructed, upwards of twenty-nine years ago, was used solely as a stable. After Mr.

Doherty purchased it in 1891 he added a second story to the front for use as a dwelling; this was completed in 1892, and so continued down to the date of the fire. The building was a frame structure, two stories in height. It is quite apparent that in erecting the building the joists or studding forming the side were built in contact with the side wall of the Sowukin building, without clapboards, and continued in a straight line to the rear of the building. When the rear of the Sowukin building was reached, a distance of thirty-three and seventy hundredths feet from the front, the building was clapboarded. These clapboards extended over on Sowukin's land thirteen hundredths of a foot, substantially an inch and a half at the rear of Sowukin's building, and eight hundredths of a foot (about one inch) in the rear of the lot. This encroachment could readily be removed at small cost by moving the portion of the encroaching side to the line of complainant's lot.

This slight encroachment should not deter the court from decreeing specific performance, as the defendant would receive all the land he bargained for, and be entitled to an abatement of the purchase price in an amount sufficient to pay the cost of making the building conform to the true line. *Van Blarcom v. Hopkins, 63 N. J. Eq. 466; Capstick v. Crane, 66 N. J. Eq. 341; Straus v. Norris, 78 N. J. Eq. 488 (494).*

In view of the fire, it will be unnecessary to consider what this abatement should be.

As a result of the fire a situation has been created which did not exist when the bill was filed, viz., the defendant's right to object, based on the encroaching clapboards, unless time is of the essence of the contract.

The defendant entered into possession of the premises on July 1st, 1909, under a lease given by James Doherty, the then owner, and continued in possession down to the date of the fire, on December 5th, 1917. James Doherty died in the year 1912, leaving his will, in which he devised the premises in question to the complainant. From the date of the above lease until May 1st, 1917, the date appointed in the contract for passing the title, the defendant was continuously in possession of the premises as tenant of James Doherty in his lifetime, and of the complainant since his decease. Whether the relation of land-

lord and tenant existed after May 1st, 1917, or the defendant was in possession as equitable owner under its contract, does not distinctly appear. The defendant, however, insists that if compelled to specifically perform, it should not be charged with the payment of rent, but interest only from May 1st, 1917.

There is nothing in the written contract which makes time of its essence. There is nothing in the case which shows that the parties intended that time should be of its essence. After the 1st of May, 1917, when defendant refused to take the title, it continued in possession, carrying on its business until December 5th, 1917, as theretofore, and after the fire, collected $2,000 on a policy of insurance covering its interest. The case is even stronger against the defendant than that of *Gerba* v. *Mitruske, 84 N. J. Eq. 141,* where the facts are quite similar. My conclusion, therefore, on this point is that time is not of the essence of this contract, and the complainant was certainly in a position to perform on December 5th, 1917.

The complainant also collected $2,000 insurance moneys on a policy covering her interest in the building, which she concedes should be credited on the purchase price.

The decree will be for complainant.

On the question of costs and interest, I will hear counsel at the chancery chambers in Jersey City on June 7th next.